UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE STEWART,                                Case No. 07-15022

             Plaintiff,                 Arthur J. Tarnow
                                               United States District Judge

v.

                                               Michael Hluchaniuk
COMMISSIONER OF                                United States Magistrate Judge
SOCIAL SECURITY,

             Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 20)

### I.   PROCEDURAL HISTORY

    A.   Proceedings in this Court

On November 27, 2007, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Arthur J. Tarnow referred this matter to Magistrate Judge Virginia M. Morgan for

the purpose of reviewing the Commissioner's decision denying plaintiff's claim

for a period of Social Security Disability Insurance Benefits. (Dkt. 2). This matter

was reassigned to the undersigned on January 14, 2008.  (Dkt. 3).  This matter is currently before the Court on cross-motions for summary judgment.  (Dkt. 13, 20).

   B.   Administrative Proceedings

Plaintiff filed the instant claims on December 1, 2003, alleging that he became unable to work on October 11, 2002.  (Tr. at 62).  The claim was initially disapproved by the Commissioner on April 9, 2004.  (Tr. at 24-28).  Plaintiff requested a hearing and on September 26, 2006, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Charles E. Reite, who considered the case *de novo*.  In a decision dated November 14, 2006, the ALJ found that plaintiff was not disabled.  (Tr. at 16-21).  Plaintiff requested a review of this decision on November 21, 2006.  (Tr. at 9-12).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on September 24, 2007, denied plaintiff's request for review.  (Tr. at 4-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled.  Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.   STATEMENT OF FACTS

### A.   ALJ Findings

Plaintiff was 47 years of age at the time of the most recent administrative hearing.  (Tr. at 165).  Plaintiff's relevant work history included approximately 13 years as an armored car pick up, a delivery person, and alarm system installer.  (Tr. at 17).  In denying plaintiff's claims, defendant Commissioner considered degenerative joint disease of the right knee as a possible bases of disability.  *Id.*

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since October 11, 2002.  (Tr. at 17).  At step two, the ALJ found that plaintiff's disorder was "severe" within the meaning of the second sequential step.  *Id.*  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id.*  At step four, the ALJ found that plaintiff could not perform his previous work as an armored car pick up, a delivery person, and alarm system installer.  (Tr. at 19)  At step five, the ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  *Id.*

Based on the evidence of record, the ALJ found that plaintiff retained the ability to occasionally lift up to 20 pounds, frequently lift and/or carry up to 10

Report and Recommendation
Cross-Motions for Summary Judgment
*Stewart v. Comm'r*; No. 07-15022

pounds, stand and/or walk for two hours in an eight hour day with a sit/stand option, and sit for six hours in an eight hour day. (Tr. at 17). The ALJ also found that plaintiff was limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling and was precluded from climbing ropes, ladders and scaffolds. (Tr. at 17).

Plaintiff's treating physician, Miguel F. Perez-Pascual, M.D., referred him to Norman E. Walter, M.D., for further evaluation of his knee pain complaints. In October 2002, Dr. Walter reported that plaintiff described pain and "giving out" of the right knee. (Tr. at 17; 131-132). On examination, Dr. Walter noted a normal gait and heel and toe walk, and normal muscle strength and range of motion. (Tr. at 17; 131). Dr. Walter also noted that the knee was stable with no evidence of effusion. *Id.* Dr. Walter reviewed x-rays, which were interpreted to be within normal limits. *Id.* Under Dr. Walter's care, plaintiff had an MRI and the October 2002 report showed improved edema associated with the anterior cruciate ligament and degenerative meniscal signal abnormality without acute care. (Tr. at 17; 118).

Continuing under Dr. Walter's care, plaintiff pursued physical therapy without any long term relief. (Tr. at 17-18; 111-116, 128, 130). In July 2003, Dr. Walter reported that he could not find anything wrong with plaintiff's knee. (Tr.

at 18; 127). While plaintiff complained of pain, swelling and burning in his knee, the examination remained unremarkable with no signs of atrophy or loss of strength.  (Tr. at 18; 127).  Plaintiff had a bone scan on July 17, 2003 that was also interpreted as unremarkable.  (Tr. at 18; 117).  Dr. Walter again expressed that "I am at a loss, to explain all his symptoms."  (Tr. at 18; 124).  In January 2004, plaintiff had his first signs of effusion and Dr. Walter agreed to proceed with arthroscopy.  (Tr. at 18; 122).  On January 30, 2004, plaintiff had a right knee diagnostic arthroscopy and it was concluded that plaintiff had a normal right knee with a medial meniscus variant being that there was no anterior horn.  (Tr. at 18; 108-109, 121).  Postoperatively and in February 2004, plaintiff continued to complain of pain and his knee giving way.  (Tr. at 18; 121).  Examination on February 26, 2004 showed 1+ to ½+ effusion, but Dr. Walter reported that he was unable to find any significant abnormality.  (Tr. at 18; 120).  Throughout Dr. Walter's progress notes are recommendations that plaintiff avoid squatting and deep knee bends.  (Tr. at 18; 120, 126, 129, 132).  Dr. Perez-Pascual reported on March 2, 2004 that "Dr. Walter advised him to go back to work with restrictions." (Tr. at 18; 142).  Examination by Dr. Perez-Pascual on that date revealed no tenderness or effusion with full motion in the right knee.  (Tr. at 18; 142).

Report and Recommendation
Cross-Motions for Summary Judgment
*Stewart v. Comm'r*; No. 07-15022

Based on the foregoing medical evidence, the ALJ observed that the abnormal clinical findings were "minimal," which was consistent with the diagnostic tests and diagnostic arthroscopy. (Tr. at 18). The ALJ also pointed to Dr. Walter's inability to find any significant abnormality except for effusion and the lack of any persistent degeneration on the MRI report. Considering the degenerative changes, the ALJ relied on Dr. Walter's recommendation that plaintiff should avoid squatting and deep knee bends. The ALJ also noted evidence from the October 2002 MRl report of an earlier MRI from February 2000, which apparently showed some degenerative process in the right knee. (Tr. at 18). According to the ALJ, this supported the state agency consulting physician's opinion that plaintiff was limited to light work. (Tr. at 18). Given the degenerative changes, the ALJ also adopted the state agency consulting physician's opinion that plaintiff was limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling and precluded from climbing ropes, ladders and scaffolds due to the degeneration in the right knee. (Tr. at 18).

The ALJ also considered Dr. Walter's opinion that, in spite of the absence of significantly abnormal findings, there were no signs of malingering and therefore found some credibility in plaintiff's complaints of pain and weakness.

(Tr. at 18).  The ALJ also found it significant that plaintiff had pursued medical care on an ongoing basis.  (Tr. at 18).  Thus, the ALJ found that plaintiff's right knee was sufficiently symptomatic to limit standing and/or walking to two hours in an eight hour day with a sit/stand option to relieve any discomfort.  (Tr. at 18).

The ALJ also considered plaintiff's subjective complaints in determining his residual functional capacity, finding that the alleged severity of symptoms claimed were credible to the extent they were otherwise consistent with the ALJ's finding of functional capacity.  (Tr. at 18).  The ALJ also concluded, however, that the medical evidence did not reflect abnormal clinical and laboratory findings to the extent consistent with plaintiff's allegations.  (Tr. at 19).  While plaintiff was prescribed anti-inflammatory and pain medication, there was no evidence of aggressive medical management that would support the degree of symptoms and limitations claimed.  (Tr. at 19).  Additionally, the ALJ found that plaintiff's daily activities were inconsistent with the severity of symptoms alleged.  (Tr. at 19). For example, plaintiff assisted with some of the household chores, was able to drive, and accompanied his wife on shopping trips.  (Tr. at 19).  At the hearing, plaintiff admitted being able to lift up to 20 pounds, but essentially lifts about 10 pounds.  (Tr. at 19).  According to the ALJ, plaintiff's daily activities were consistent with his finding of functional capacity.  (Tr. at 19).  And, while the ALJ

found that plaintiff experienced some degree of pain, the evidence as a whole did not support the severe symptoms expressed by plaintiff. (Tr. at 19). Considering the evidence as a whole, the ALJ found that the alleged intensity, persistence and functionally limiting effects of the subjective complaints were only credible to the extent consistent with his finding of residual functional capacity. (Tr. at 19).

Considering plaintiff's residual functional capacity and past work, the vocational expert testified that claimant did not retain the ability to perform his former jobs. (Tr. at 19). Based on the credible testimony of the vocational expert, the ALJ found that there were jobs existing in significant numbers in the national economy that plaintiff could perform. (Tr. at 19). The ALJ adopted the testimony of the vocational expert and found that plaintiff was not disabled. (Tr. at 19).

B.    Parties' Arguments

1.    Plaintiff's claims of error

Plaintiff argues that, because each element of the hypothetical posed to the vocational expert at the hearing does not accurately describe plaintiff in all significant, relevant respects, the vocational expert's testimony at the hearing should not constitute substantial evidence. (Dkt. 13). Plaintiff asserts that the ALJ's hypothetical question was defective because it did not properly account for plaintiff's need to elevate his leg to above waist level and plaintiff's need to nap or

to elevate his leg for a "couple of hours here and there." (Dkt. 13).  Plaintiff also

asserts that the ALJ failed to take into account his testimony regarding pain

medication and problems sleeping at night.  (Dkt. 13, citing, Tr. at 171).  The

vocational expert was asked to assume rest periods requiring elevation of the leg

two or three times during a work cycle for about a half hour each.  The vocational

expert testified that this assumption would "eliminate all the work that I testified

to here.  It's just beyond the scope of what most employers will tolerate. And

you're also talking about a person who's not going to be productive during this

period of time just because of position."  (Dkt. 13, citing, Tr. at 187).  Plaintiff

also argues that the ALJ erred in evaluating his credibility.  (Dkt. 13).

     In the alternative, plaintiff argues that the ALJ failed to properly follow SSR

00-4p, which requires and ALJ to ask a vocational expert "if the evidence he or

she has provided conflicts with information provided in the DOT."  (Dkt. 13).

According to plaintiff, in reviewing the transcript of the hearing held on

September 26, 2006, "it does not appear that the ALJ asked the VE whether the

testimony was consistent with the Dictionary of Occupational Titles."  (Dkt. 13).

According to plaintiff, the ALJ must ask the vocational expert if his or her

testimony conforms to the DOT, and here, the ALJ failed to do so, which requires

a remand.  (Dkt. 13).

2.      Commissioner's counter-motion for summary judgment

The Commissioner argues that the ALJ's credibility determination was supported by the substantial evidence.  The Commissioner points out that the ALJ discussed the medical evidence in detail, noting that the abnormal clinical findings were "minimal" and the diagnostic tests and the diagnostic arthroscopy failed to show very significant findings.  (Dkt. 20, citing, Tr. at 17-18).  As the ALJ stated, throughout his treatment, Dr. Walter regularly told plaintiff to avoid squatting and deep knee bends.  (Dkt. 20, citing, Tr. at 18, 108-32).  Dr. Walter did not, however, limit plaintiff any further and he never imposed limitations inconsistent with those in the ALJ's RFC determination.  Rather, the Commissioner asserts, Dr. Walter merely indicated that plaintiff seemed unable to return to his past work, which is entirely consistent with the ALJ's determination.  The Commissioner points out that it is well-accepted that the mere diagnosis of an impairment does not indicate the severity of the impairment and, in the presence of "minimal findings" and negative test results, the ALJ gave plaintiff the benefit of the doubt, based on Dr. Walter's statement and his good work record, restricting him to a limited range of light work.  (Dkt. 20, citing, Tr. at 18).  The Commissioner suggests that merely because the ALJ credited these factors does not mean that he was required to find plaintiff fully credible.

Report and Recommendation
Cross-Motions for Summary Judgment
*Stewart v. Comm'r*; No. 07-15022

The Commissioner argues that plaintiff inappropriately relies on his own subjective complaints to the state agency physician regarding problems sleeping and doing activities due to pain.  (Dkt. 20, citing, Tr. at 138).  Again, the Commissioner takes the position that the mere reference to these complaints does not establish plaintiff's condition and a physician may not base his medical conclusion on a patient's subjective complaints.  According to the Commissioner, the ALJ was not required to credit plaintiff's claims of pain, the need to elevate his leg, the need for naps, and a restriction of activities because the medical treatment and use of medication did not support the level of disability plaintiff claimed.  (Dkt. 20, citing, Tr. at 19).  Moreover, while plaintiff testified that he stopped using prescription medication due to side effects, the Commissioner points out that the medical record does not show that he talked with his doctors about this issue or about an alternative medication he could use.  (Dkt. 20).  The record further fails to show that any doctor instructed plaintiff to elevate his leg to waist level or otherwise; as the ALJ noted, the record did not show swelling during most of the relevant period.

Additionally, at the hearing in September 2006, plaintiff testified that he had not had any treatment since March 2004, when he was treated by Dr. Perez-Pascual and that he stopped treatment because he had no insurance after

settling his worker's compensation claim.  (Dkt. 20, citing, Tr. at 164, 174-175).

The Commissioner points out, however, that plaintiff settled his worker's

compensation claim in March 2005 and plaintiff received about $65,000.  (Dkt.

20, citing, Tr. 174-75, 178).  The Commissioner asserts that the ALJ could

reasonably conclude that the absence of any treatment during a year when plaintiff

still had health insurance detracted from plaintiff's credibility, and the ALJ could

reasonably conclude that, if plaintiff were suffering to the degree alleged, he might

have used part of his worker's compensation settlement to seek the recommended

opinion at the University of Michigan or other treatment.  (Dkt. 20).

The Commissioner urges the Court to reject plaintiff's contention that the

ALJ erred by failing to ask the vocational expert if his testimony was consistent

with the Dictionary of Occupational Titles as required by SSR 00-4p.  (Dkt. 20).

The Commissioner points out that the vocational expert testified as to his

familiarity with the DOT, as well as more updated publications, and that the

vocational expert consistently referred to DOT numbers with reference to jobs he

was describing.  (Dkt. 20, citing, Tr. at 182-88).  Thus, the Commissioner argues

that because the vocational expert gave DOT numbers for the jobs he identified, it

was clear that he was drawing on the DOT for his testimony, and there was no

need for the ALJ to ask, specifically, "is your testimony consistent with the

DOT?"  (Dkt. 20).  The Commissioner urges the Court to reject plaintiff's request

for a remand merely to require the ALJ to ask such a pro forma question given that

plaintiff has not even tried to demonstrate that the vocational expert's testimony

conflicted with DOT.  And, the Commissioner asserts, since the vocational expert

cited the DOT, and plaintiff fails to show that the vocational expert's testimony

conflicted with the DOT, any error by the ALJ was harmless. (Dkt. 20, citing,

*NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n. 6 (1969), quoted in *Wilson v.*

*Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir.  2004) (where "remand would be

an idle and useless formality," courts are not required to "convert judicial review

of agency action into a ping-pong game.")).

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); Walters, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" Rogers, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." McClanahan v. Comm'r of Soc. Sec., 474 F.3d 830, 833 (6th Cir. 2006); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers, 486 F.3d at 241; Jones, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

Report and Recommendation
Cross-Motions for Summary Judgment
*Stewart v. Comm'r*; No. 07-15022

B.     Governing Law

1.     Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq.*).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

2.    Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion.

Report and Recommendation
Cross-Motions for Summary Judgment
*Stewart v. Comm'r*; No. 07-15022

_McClanahan_, 474 F.3d at 833; _Mullen_, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole.  20 C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight."  Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record."  _Wilson_, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating

Report and Recommendation
Cross-Motions for Summary Judgment
_Stewart v. Comm'r_; No. 07-15022

source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).  "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).

C.    Analysis and Conclusions

The ALJ determined that plaintiff possessed the residual functional capacity to return to a limited range of light work.  (Tr. at 18).

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or

> she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity
> or inability to sit for long periods of time.

20 C.F.R. 404.1567(b).  Social Security Ruling (SSR) 83-10 clarifies this

definition and provides that:

> "Occasionally" means occurring from very little up to
> one-third of the time.  Since being on one's feet is
> required "occasionally" at the sedentary level of
> exertion, periods of standing or walking should generally
> total no more than about 2 hours of an 8-hour workday,
> and sitting should generally total approximately 6 hours
> of an 8-hour workday.  Work processes in specific jobs
> will dictate how often and how long a person will need
> to be on his or her feet to obtain or return small articles.

After review of the record, I conclude that the ALJ utilized the proper legal

standard in his application of the Commissioner's five-step disability analysis to

plaintiff's claim.  As noted earlier, if the Commissioner's decision is supported by

substantial evidence, the decision must be affirmed even if the court would have

decided the matter differently and even where substantial evidence supports the

opposite conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In

other words, where substantial evidence supports the ALJ's decision, it must be

upheld.

1.     RFC, hypothetical question and credibility

No treating physician opined that plaintiff was functionally restricted

beyond his limitations with respect to squatting and deep knee bends.  As noted by

Dr. Walter, these restrictions precluded plaintiff from performing his former work,

but Dr. Walter never restricted plaintiff in any other respect.  *See Maher v. Sec'y*

*of Health and Human Serv.*, 898 F.2d 1106, 1109 (6th Cir. 1987), citing, *Nunn v.*

*Bowen*, 828 F.2d 1140, 1145 (6th Cir. 1987) ("lack of physical restrictions

constitutes substantial evidence for a finding of non-disability.").  To the extent

that plaintiff points to other subjective limitations, such as the need for naps and

elevation of his leg, such subjective evidence is only considered to "the extent [it]

can reasonably be accepted as consistent with the objective medical evidence and

other evidence."  *Ditz v. Comm'r of Soc. Sec.*, 2009 WL 440641, *10 (E.D. Mich.

2009)*, citing, 20 C.F.R. § 404.1529(a), *Young v. Secretary*, 925 F.2d 146, 150-51

(6th Cir. 1990); *Duncan v. Sec'y*, 801 F.2d 847, 852 (6th Cir. 1986).  In this case,

there is no such evidence.

Indeed, plaintiff's claim of additional restrictions and limitations beyond

those imposed by his treating physician is ground primarily on the mere existence

of his condition, rather than on any resulting impairments or specific restrictions.

This is insufficient to establish an inability to work.  *See e.g., Howard v. Comm'r*

*of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."); *Yang v. Comm'r of Soc. Sec.,* 2004 WL 1765480, *5 (E.D. Mich. 2004) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other."); *Griffeth*, 217 Fed.Appx. at 429 ("The regulations recognize that individuals who have the same severe impairment may have different residual functional capacities depending on their other impairments, pain, and other symptoms.").

Given that a severe impairment does not equate to disability, the undersigned suggests that the ALJ's decision to find plaintiff's claimed limitations to be only partially credible is supported by the substantial evidence in the record and properly incorporated into the RFC finding.  The ALJ's obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate."  *Jones*, 336 F.3d at 476.  When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses.  *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a

trier of fact is not required to ignore incentives in resolving issues of credibility.");

*Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999). An ALJ's

findings based on the credibility of an applicant are to be accorded great weight

and deference, particularly since the ALJ is charged with the duty of observing a

witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525,

531 (6th Cir. 1997). "The rule that a hypothetical question must incorporate all of

the claimant's physical and mental limitations does not divest the ALJ of his or her

obligation to assess credibility and determine the facts." *Redfield v. Comm'r of

Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required

to incorporate the limitations that he finds credible. *Casey*, 987 F.2d at 1235.

This obligation to assess credibility extends to the claimant's subjective

complaints such that the ALJ "can present a hypothetical to the VE on the basis of

his own assessment if he reasonably deems the claimant's testimony to be

inaccurate." *Jones*, 336 F.3d at 476. An ALJ's findings based on the credibility

of an applicant are to be accorded great weight and deference, particularly since

the ALJ is charged with the duty of observing a witness's demeanor and

credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

　　　The ALJ reasonably concluded that plaintiff's claims were not entirely

credible for several reasons. The ALJ concluded that the medical evidence did not

reflect abnormal clinical and laboratory findings to the extent consistent with plaintiff's allegations, and, while plaintiff was prescribed anti-inflammatory and pain medication, there was no evidence of aggressive medical management that would support the degree of symptoms and limitations claimed. (Tr. at 19). Additionally, the ALJ found that plaintiff's daily activities were inconsistent with the severity of symptoms alleged. (Tr. at 19). For example, plaintiff assisted with some of the household chores, was able to drive, and accompanied his wife on shopping trips. (Tr. at 19). At the hearing, plaintiff admitted being able to lift up to 20 pounds, but essentially lifts about 10 pounds. (Tr. at 19). According to the ALJ, plaintiff's daily activities were consistent with his finding of functional capacity. (Tr. at 19). Further, while the ALJ found that plaintiff experienced some degree of pain, he concluded that the evidence as a whole did not support the severe symptoms expressed by plaintiff. (Tr. at 19). The undersigned finds no basis to disturb the ALJ's credibility findings.

The ALJ's RFC findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed plaintiff's individual physical and mental impairments in harmony with the objective record medical evidence, and in particular, the findings and assessments

of Dr. Walter. *See*, *Griffeth*, 217 Fed.Appx. at 429; *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

       2.     Medication side effects

The undersigned suggests that plaintiff's claim that the ALJ erred because he failed to take into account plaintiff's testimony regarding medication side effects should be rejected. "Allegations of a medication's side effects must be supported by objective medical evidence." *Daniels v. Comm'r of Soc. Sec.*, 2008 WL 4394356 (W.D. Mich. 2008), citing, *Farhat v. Sec'y of Health and Hum. Servs.*, 1992 WL 174540, *3 (6th Cir. 1992); *Bentley v. Comm'r of Soc. Sec.*, 2001 WL 1450803, *1 (6th Cir. 2001) (noting absence of reports by treating physicians that claimant's "medication caused drowsiness as a side effect"); *Donegan v. Sec'y of Health and Hum. Servs.*, 1993 WL 291301, *7 (6th Cir. 1993) (no objective medical evidence supported claimant's allegation that medication made him so drowsy he could not work); *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) (no evidence in record that claimant told his doctors that the medication made him drowsy); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (noting that the record did not disclose concerns about side effects by the several doctors who examined and treated claimant); *see also Cross v. Comm'r of Soc. Sec.*, 2008 WL 5071714, *6 (W.D. Mich. 2008). Plaintiff does not point to, and the undersigned

was unable to locate, any suggestion in plaintiff's medical records that he

complained about medication side effects.  Thus, there is no basis to disturb the

ALJ findings.

3.      SSR 00-4p

Plaintiff argues that the ALJ failed to identify and resolve any conflicts

pursuant to SSR 00-4p.  SSR 00-4p requires that:

> When a VE ... provides evidence about the requirements
> of a job or occupation, the adjudicator has an affirmative
> responsibility to ask about any possible conflict between
> that VE or VS evidence and information provided in the
> DOT. In these situations the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided
> conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the
> DOT, the adjudicator will obtain a reasonable
> explanation for the apparent conflict.

SSR 00-4p is used "[w]hen there is an apparent unresolved conflict between VE ...

evidence and the DOT."  *Zinis v. Comm'r of Soc. Sec.*, 2009 WL 261474, *10

(E.D. Mich. 2009).  "[W]here there is no unresolved conflict, the ALJ's failure to

ask the VE whether his testimony is consistent is not reversible error or even error

requiring remand."  *Kreh v. Comm'r of Soc. Sec.*, 2008 WL 4534177, citing, *Rowe

v. Astrue*, 2008 WL 1711538, at *3 (E.D. Ky. 2008) (where hypothetical

accurately reflected plaintiff's limitations and ALJ was unaware of any conflict,

ALJ was under no duty to explain how conflict was resolved); *Winstead v. Comm'r*, 2008 WL 819073, at *15-16 (S.D. Ohio 2008) (where question posed to VE accurately reflected plaintiff's limitations, plaintiff's contention that ALJ erred in failing to inquire into possible conflicts was without merit).

In this case, the ALJ first questioned the vocational expert regarding the materials he used and relied, which included the DOT:

> Q    And to the extent that you got more current information, the reference materials that we use, Dictionary of occupational Titles among others, are somewhat out of date. Do you have experience in reviewing the job market that would update those kinds of requirements and numbers of jobs?
>
> A    Yes, I do. I subscribe to a number of government publications that provides me with quarterly data in almost all fields.

(Tr. at 182).   For each job category described by the vocational expert, he referred to the DOT code and also the exertional category assigned by the DOT.  (Tr. at 184-185).  The undersigned suggests that no conflict between the vocational expert's testimony is apparent and plaintiff points to none.

The undersigned further suggests that even if the ALJ erred, the error is harmless and provides no basis for reversal or remand.  "An error is harmless where it has no bearing on the procedure used or the substance of the ultimate decision." *Masters v. Astrue*, 2008 WL 4082965, *3 (E.D. Ky. 2008).  Moreover,

the Sixth Circuit has found that the harmless-error rule applies in the Social

Security context.  *Masters*, at *3, citing, *Heston v. Comm'r of Social Security*, 245

F.3d 528, 535 (6th Cir. 2001) (failure to explain weight given to treating physician

not reversible error where ALJ's opinion is nonetheless supported by substantial

evidence and error was harmless.).  And, "the failure to strictly abide by the

guidelines in SSR 00-4p does not necessitate reversal where the ALJ's opinion is

supported by substantial evidence and the error was harmless." *Masters*, at *3.

As set forth above, the ALJ's opinion is well-supported by substantial evidence

and there is virtually no evidence in the record suggesting that plaintiff is

functionally restricted in any other way than that found by the ALJ.  Thus, the

undersigned suggests that any error is harmless.

    4.  Conclusion

  After review of the record, I conclude that the decision of the ALJ, which

ultimately became the final decision of the Commissioner, is within that "zone of

choice within which decisionmakers may go either way without interference from

the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial

evidence.

## IV.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 10 days after service of an

objection, the opposing party must file a concise response proportionate to the

objections in length and complexity.  The response must specifically address each

issue raised in the objections, in the same order, and labeled as "Response to

Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that

any objections are without merit, it may rule without awaiting the response.

                                                        s/Michael Hluchaniuk

Date: March 2, 2009                         Michael Hluchaniuk
                                              United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

       I certify that on March 2, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Mikel E. Lupisella, Steven P. Cares, AUSA, and the Commissioner of Social Security</u>.

                                            s/Darlene Chubb
                                          Judicial Assistant